PEARSON, J.

UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF OHIO
EASTERN DIVISION

| | | |
|---|---|---|
| SABRINA SIMS, | ) | CASE NO. 1:09 CV 2862 |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| | ) | |
| v. | ) | |
| | ) | JUDGE BENITA Y. PEARSON |
| | ) | |
| MICHAEL J. ASTRUE, | ) | |
| Commissioner of Social Security, | ) | |
| | ) | **MEMORANDUM OF OPINION AND** |
| Defendant. | ) | **ORDER** |

Plaintiff Sabrina Sims sought judicial review of the Social Security Administration's ("Agency") final decision denying her applications for Disability Insurance Benefits and Supplemental Security Income (collectively "benefits"), pursuant to 42 U.S.C. § 405(g).

For the reasons provided below, the Court affirms the Agency's decision denying benefits to Sabrina Sims.

**I. Procedural History**

On February 6, 2006, Sims filed applications for benefits alleging a period of disability that began on February 25, 2005. (TR 24, 25, 71-76.) After her applications were denied initially and upon reconsideration, Sims requested a hearing which occurred on October 15, 2008 before an Administrative Law Judge ("ALJ") who found that Sims was not under a disability from February 25, 2005, through December 31, 2008– the date of the ALJ's decision. (TR 11-22.) On October 13, 2009, the Appeals Council denied Sims' request for review, making the decision of the ALJ the final decision of the Agency. (TR 3-5.)

(1:09 CV 02862)

Sims now seeks judicial review of the Agency's decision pursuant to 42 U.S.C. §§ 405(g)

and 1383(c)(3).

## II. **ALJ Findings**

The ALJ made the following findings:

1. [] Sims meets the insured status requirements of the Social Security Act through December 31, 2009.  (TR 16.)

2. [] Sims has not engaged in substantial gainful activity since February 25, 2005, the alleged onset date (20 CFR 404.1571 *et seq*. and 416.921 *et seq*.).  (TR 16.)

3. [] Sims has the following severe impairments: degenerative disc disease; mild osteoarthritis and chronic synovitis vs. piriformis syndrome of the left hip; right moderate and left mild carpal tunnel syndrome; right rotator cuff tendonopathy, and obesity (20 CFR 404.1521 *et seq*., and 416.971 *et seq*. ).  (TR 16.)

4. [] Sims does not have an impairment or combination of impairments that meets or medically equals one of the listed impairments in 20 CFR Part 404, Subpart P, Appendix 1 (20 CFR 404.1525 and 404.1526, 416.925 and 416.926).  (TR 17.)

5. After careful consideration of the entire record, I find that [] Sims has the residual functional capacity to perform a range of sedentary work as defined in 20 CFR 404.1567(a) and 416.967(a).  Specifically she can lift, carry, push and pull ten pounds occasionally.  She can sit in one-hour intervals up to six hours per day and can stand and/or walk in 30-minute intervals up to two hours per day.  After one hour of sitting or 30 minutes of standing or walking she needs to change position for a couple of minutes but can continue working during that time.  She cannot climb, balance, kneel or crawl.  She can occasionally stoop and crouch.  (TR 17.)

6. [] Sims is capable of performing past relevant work as a customer service representative, unit clerk, and office receptionist.  This work does not require the performance of work-related activities precluded by her residual functional capacity (20 CFR 404.1565 and 416.965).  (TR 21.)

7. [] Sims has not been under a disability, as defined in the Social Security Act, from February 25, 2005, through the date of this decision (20 CFR 404.1520(f) and 416.920(f)).  (TR 22.)

-2-

(1:09 CV 02862)

### III.  Standard for Establishing Disability

To establish disability under the Social Security Act, a claimant must show that he is unable to engage in substantial gainful activity due to the existence of "a medically determinable physical or mental impairment that can be expected to result in death or that has lasted or can be expected to last for a continuous period of not less than twelve months." *See* 42 U.S.C. §§ 423(d)(1)(A), 1382(c)(a)(3)(A).  The claimant's impairment must prevent him from doing his previous work, as well as any other work existing in significant numbers in the national economy.  *See* 42 U.S.C. §§ 423(d)(2)(A); 1382c(a)(3)(B).

To determine whether a claimant is disabled, Agency regulations prescribe a five-step sequential evaluation.  If a claimant can be found disabled or not at any step of the sequential evaluation, the review ends there.  20 C.F.R. § 404.1520(a).  At Step One, the ALJ considers the claimant's current work activity.  A claimant is not disabled if engaged in substantial gainful activity, *i.e.*, working for profit.  At Step Two, the ALJ considers the medical severity of the claimant's impairments.  A claimant is not disabled if she does not have a severe medically determinable physical or mental impairment that also meets the duration requirement in 20 C.F.R. § 404.1509, or a combination of impairments that are severe and meet the duration requirement.  At Step Three, the ALJ determines whether the claimant's impairment meets or equals one of the criteria of an impairment listed in Appendix 1 while also meeting the duration requirement.  *See* 20 C.F.R. § Part 404, Subpart P, Appendix 1.  A claimant is disabled if she has an impairment that meets

-3-

(1:09 CV 02862)

the listing and the duration requirement.

Before considering the fourth step, the ALJ must determine the claimant's Residual Functional Capacity ("RFC"), *i.e.*, the claimant's ability to perform physical and mental work on a sustained basis despite limitations from impairments.  At Step Four, the ALJ considers whether the claimant's RFC permits her to perform past relevant work.

At the final step, Step Five, the ALJ considers the claimant's RFC, age, education, and work experience to determine whether the claimant may perform any work available in the national economy.  Even if the claimant's impairment prevents her from performing her past relevant work, the claimant is not disabled if other work exists in the national economy that she is capable of performing.  *Abbott v. Sullivan*, 905 F.2d 918, 923 (6th Cir. 1990); *see also Barnhart v. Thomas*, 540 U.S. 20, 24-25 (2003) (describing the five-step evaluation).

The claimant bears the burden of proof at Steps One through Four.  *Warner v. Comm'r of Soc. Sec.*, 375 F.3d 387, 390 (6th Cir. 2004); *Richardson v. Heckler*, 750 F.2d 506, 509 (6th Cir. 1984) ("A social security disability claimant bears the ultimate burden of proof on the issue of disability.").  This means that the claimant bears the ultimate burden of proof regarding the issues of disability and the establishment of a disability onset date.  *See* 20 C.F.R. § 404.1512(a) ("In general, you have to prove to us that you are blind or disabled.");  *McClanahan v. Comm'r of Soc. Security*, 474 F.3d 830, 836 (6th

(1:09 CV 02862)

Cir. 2006).    At Step Five of the sequential evaluation, the burden shifts to the Agency[1]

to identify "a significant number of jobs in the economy that accommodate the claimant's

residual functional capacity ([as] determined at [S]tep [F]our) and vocational profile."

*Jones v. Comm'r of Soc. Sec.*, 336 F.3d 469, 474 (6th Cir. 2003); *see also* 20 C.F.R. §

404.1512(a); *Bowen v. Yuckert*, 482 U.S. 137, 146 n.5 (1987) ("[The Agency] bears the

burden of proof at [S]tep [F]ive, which determines whether the claimant is able to

perform work available in the national economy.").

### IV.  Judicial Review of the Final Agency Decision

Judicial review of the ALJ's decision denying disability benefits is limited to

determining whether there is substantial evidence to support the denial decision and

whether the Agency properly applied relevant legal standards.  *Brainard v. Sec'y of*

*Health and Human Servs.*, 889F.2d 679, 681 (6th Cir. 1989) (citing *Richardson v.*

*Perales*, 402 U.S. 389 (1971)).  Under 42U.S.C. § 405(g), the findings of the ALJ are

conclusive if supported by substantial evidence.  "Substantial evidence [is] more than a

scintilla of evidence, but less than preponderance; it is such relevant evidence as a

reasonable mind might accept as adequate to support a conclusion."  *Cutlip v. Sec'y of*

*Health and Human Servs.*, 25 F.3d 284, 286 (6th Cir.1994).

In determining the existence of substantial evidence, the reviewing court must

examine the administrative record as a whole.  *Kirk v. Sec'y of Health & Human Servs.*,

---

[1]  The Agency's actions are carried out by the Commissioner of the Social Security
Administration and his representatives.

(1:09 CV 02862)

667 F.2d 524,535, 536 (6th Cir. 1981); *Heston v. Comm'r of Soc. Sec.,* 245 F.3d 528. 535 (6th Cir. 2001).  The ALJ's decision must be affirmed if it is supported by substantial evidence even if the reviewing court would have decided the matter differently or substantial evidence also supports a different conclusion.  *See Her v. Comm'r of Soc. Sec.,* 203 F.3d 388, 389-90 (6th Cir.1999); *Mullen v. Bowen,* 800 F.2d 535, 545 (6th Cir. 1986).  "Even if supported by substantial evidence, however, a decision of the Commissioner will not be upheld where the [Agency] fails to follow its own regulations and where that error prejudices a claimant on the merits or deprives the claimant of a substantial right."  *Bowen v. Comm'r of Soc. Sec.,* 478 F.3d 742, 746 (6th Cir. 2006).

The substantial evidence standard presupposes that there is a "zone of choice" within which the Agency may proceed without interference from the courts.  *Mullen,* 800 F.2d at 545 (6th Cir. 1986).  A district court may consider evidence in the record, regardless of whether it has been cited by the ALJ.  *Id.*  The reviewing court, however, may not try the case *de novo*, resolve conflicts in the evidence, or decide questions of credibility.  *See Brainard,* 889 F.2d at 681; *Garner v. Heckler,* 745 F.2d 383, 387 (6th Cir. 1984).

## V.  <u>Analysis</u>

On appeal, Sims raises an argument which posits that the ALJ made two errors.[2]

---

[2]  "The ALJ failed to accord proper weight to the opinion of Sims' treating physician and ignored the substantial weight of the evidence when he adopted a residual functional capacity that set forth no limitations attributable to Sims' bilateral carpal tunnel syndrome."  ECF No. 17 at 6.

(1:09 CV 02862)

Sims argues that the ALJ (1) failed to assign the appropriate weight to the opinion of

Sims' treating physician and (2) ignored substantial evidence when he adopted a residual

functional capacity that did not include limitations attributable to Sims' bilateral carpal

tunnel syndrome.  ECF No. 17 at 6.  For the reasons provided  below, neither argument

has merit.

### A.  The ALJ Gave the Proper Weight to the Opinion of Sims' Treating Physician and the ALJ's RFC Determination is Supported by Substantial Evidence

Sims' contends that the ALJ erred in discounting the weight the ALJ attributed to

the opinion of her treating physician, Dr. Lin, and that the ALJ ignored the substantial

weight of the evidence when he adopted an RFC that did not include limitations resulting

from Sims' bilateral carpal tunnel syndrome impairment.[3]  Sims also argues that the ALJ

did not rely upon the factors specified in *Wilson v. Comm'r of Soc. Sec.*, 378 F.3d 541,

544 (6th Cir. 2004), in determining how much weight to give to Dr. Lin's opinion.  She

avers that objective medical testing in the record supports Dr. Lin's restriction.  ECF No.

17 at 8-10.  Sims concludes that the (1) ALJ's failure to provide "sufficient reasoning" for

not adopting Sims' limitations due to bilateral carpal tunnel impairment espoused by Dr.

Lin and (2) his failure to include the fine manipulation limitation into his RFC

determination was error and contrary to the substantial evidence requirement.  ECF No.

17 at 11.

---

[3]  While Sims does not explicitly state that the opinion of Dr. Lin was entitled to controlling weight, she argues that the ALJ failed to appropriately justify his decision to give Dr. Lin's opinion less than controlling weight.

(1:09 CV 02862)

The Agency urges that the ALJ's decision should be affirmed because substantial evidence supports the ALJ's residual functional capacity determination as the ALJ determined, in accordance with Agency rules, that the record as a whole did not support a fine manipulation restriction and, consequently, the ALJ disregarded this restriction.  ECF No. 19 at 5-6.  The Agency's counsel also urges that, in accordance with Sixth Circuit caselaw, "the opinion of a treating physician is entitled to controlling weight only if it is supported by medically acceptable clinical and laboratory diagnostic techniques and does not conflict with other substantial evidence."  *See Combs v. Comm'r of Soc. Sec.*, 459 F.3d 640, 652 (6th Cir. 1993) (citing to *Bogle v. Sullivan*, 998 F.2d 342, 347-48 (6th Cir. 1993); ECF No. 18 at 6.  Because Dr. Lin's "restriction" was in conflict with his later issued opinion as well as other evidence on the record, the Agency argues that his opinion was not entitled to controlling weight and the ALJ was, therefore, justified in providing substantially less weight to certain findings of Dr. Lin.  ECF No. 19 at 5-8.

### 1.  The Treating Physician Rule

In assessing the medical evidence provided in support of a claim for disability benefits, there are certain governing standards or rules that an ALJ must follow.  Among these rules is the treating physician rule which requires the ALJ to give a treating source opinion "controlling weight" *if* the treating source opinion is "well-supported by medically acceptable clinical and laboratory diagnostic techniques and is not inconsistent

(1:09 CV 02862)

with the other substantial evidence in [the] case record."[4]  20 C.F.R. § 404.1527(d)(2).

An ALJ may grant a treating physician's medical opinion less than controlling weight, but the ALJ's decision must be accompanied by "good reasons" that are both: (1) supported by the evidence in the case record, and (2) sufficiently specific to make clear to any subsequent reviewers the weight the adjudicator gave to the treating source's medical opinion and the reasons for that weight.  SSR. 96-2p.  The ALJ's failure to follow the procedural requirement "of identifying the reasons for discounting the opinion and for explaining precisely how those reasons affected the weight accorded the opinions denotes a lack of substantial evidence, even where the conclusion of the ALJ may be justified based upon the record."  *Rogers v. Comm'r of Soc. Sec.*, 486 F.3d 234, 243 (6th Cir. 2007).

In the event that the ALJ does not give controlling weight to a treating physician's opinion, he must still consider how much, if any, weight to give that opinion.  The ALJ makes this determination by considering the following factors:

> (1) the frequency of examination and the length, nature, and extent of the treatment relationship;
> (2) the evidence in support of the treating physician's opinion;
> (3) the consistency of the opinion with the record as a whole;
> (4) whether the opinion is from a specialist; and
> (5) other factors brought to the Social Security Administration's attention that

---

[4] A physician qualifies as a treating source if the claimant sees her "with a frequency consistent with accepted medical practice for the type of treatment and/or evaluation required for [the] medical condition."  20 C.F.R. § 404.1502.

(1:09 CV 02862)

tend to support or contradict the opinion.[5]

20 C.F.R. § 404.1527(d)(2).  *See Wilson v. Comm'r of Soc. Sec.*, 378 F.3d 541, 544 (6th Cir. 2004).  Regardless of the weight the ALJ assigns to the opinion of a treating physician, "[t]he determination of disability is [ultimately] the prerogative of the [Commissioner], not the treating physician." *Vance v. Comm'r of Soc. Sec.*, 260 Fed.Appx. 801, 804 (6th Cir. 2008) (quoting *Harris v. Heckler*, 756 F.2d 431, 435 (6th Cir. 1985)).

### 2.  The ALJ Complied with the Treating Physician Rule

In compliance with the treating physician rule, the ALJ considered the evidence submitted by Dr. Lin.  20 C.F.R. § 404.1527(d)(2).  Pursuant to the rule, the ALJ acknowledged Dr. Lin as Sims' treating physician and weighed the doctor's opinions or findings.  The ALJ attributed great weight to portions of Dr. Lin's opinion, but declined to give Dr. Lin's opinion controlling weight because he found Dr. Lins's opinion inconsistent with other substantial evidence on the record.  (TR 20.)  In addressing Dr. Lin's overall opinion, the ALJ stated that he "incorporated as much of Dr. Lin's opinions into the residual function capacity [he] ultimately assessed as [he] could" but he declined to adopt Dr. Lin's complete findings because he concluded that "[p]ortions of his opinions, however, [made] no sense and [were] not supported by the objective evidence or by the Dr. Lin's treatment notes." (TR 20.)  The record supports the ALJ's findings.

---

[5] Notably, "in all cases there remains a presumption, albeit a rebuttable one, that the opinion of a treating is entitled to great deference, its non-controlling status notwithstanding." *Rogers,* 486 F.3d at 242.

(1:09 CV 02862)

### a.  The ALJ Considered the Requisite Factors When Determining How Much Weight to Accord Dr. Lin's Opinion

In compliance with the treating physician rule, having declined to afford Dr. Lin's overall opinion controlling weight, the ALJ properly considered Dr. Lin's findings based on the requisite factors set forth in 20 C.F.R. § 404.1527 (d)(2)-(d)(6).  The ALJ explicitly states that upon determining Sims' residual functional capacity he "considered evidence in accordance with the requirements of 20 C.F.R. § 404.1527 and SSR[] 96-2p"–both of which amplify the treating physician rule.  As in indicated above, the ALJ acknowledged Dr. Lin's role as Sims' treating physician-- a requirement under 20 C.F.R. §§ 404.1527(d)(2).  The ALJ subsequently determined that portions of Dr. Lin's findings demanded substantially less weight based on the requisite factors discussed herein.  (TR 20.)

Pursuant to 20 C.F.R. §§ 404.1527(d)(3), which requires the ALJ to consider the evidence substantiating a treating source's opinion, the record reflects that portions of Dr. Lin's opinion lacked sufficient explanation.  For example, on February 8, 2008, Dr. Lin opined that Sims could "sit, stand, and walk 1-4 hours per day." (TR 20 citing TR 131.) Just three months after that assessment, however, Dr. Lin concluded that Sims "could sit for no more than one hour and stand and/or walk for no more than 30 minutes in a normal workday."  (TR 20 citing TR 134.)  The ALJ acknowledged that the latter opinion represented a marked decline of Sims' overall residual functioning capacity, but he

-11-

(1:09 CV 02862)

ultimately decided to give this opinion less weight because Dr. Lin's conclusions that

Sims suddenly experienced a drastic change in her functioning ability was unexplained

and, therefore, unsubstantiated.  (TR 20.)

The Social Security regulations provide that "[t]he more a medical source presents

relevant evidence to support an opinion, particularly medical signs and laboratory

findings, the more weight [ALJs] will give that opinion.  The better an explanation a

source provides for an opinion, the more weight [ALJs] will give that opinion."  20

C.F.R. §§ 404.1527(d)(3).  Thus, in the case at hand, the ALJ's decision to discount Dr.

Lin's opinion for lack of substantiation was proper and in accordance with the treating

physician rule.  *Id.*; *see also McCombs v. Comm'r of Soc. Sec.*, 2010 U.S. Dist. Lexis

100620, *25-26 (S.D. Ohio 2010) (finding that ALJ did not err in assigning the treating

source significantly less weight partially on the ground that the treating source failed to

explain the basis of her opinion).

The record also reflects that portions of Dr. Lin's opinions conflicted with

substantial evidence on the record, including that provided by Dr. Lin.  Pursuant to 20

C.F.R. §§ 404.1527(d)(4), which mandates that the ALJ examine the consistency of the

opinion to the record as a whole, the ALJ appropriately discounted inconsistent findings

on that basis.  In addition to the internal inconsistencies in Dr. Lin's own findings which

are discussed in more detail below, the ALJ noted that a substantial portion of Dr. Lin's

findings regarding Sims' limitations conflicted with Sims' own testimony regarding her

daily activities including her current job.  For instance, Dr Lin opined that Sims could not

-12-

(1:09 CV 02862)

sit for more than "5 to 10 minutes at a time before having to change position, ultimately

having to lay inverted." (TR 19, 20 citing 315.) The ALJ was unable to reconcile this

restriction with Sims' duties as a receptionist in her part time job, where Sims was, in

fact, required to sit for more than ten minutes without having to change positions. (TR

20.) The ALJ further stated that there was no evidence that Sims' "employer allowed her

to 'lay inverted' during the 4-hour period while she [was] working." (TR 20.)

Accordingly, the ALJ properly gave less weight to Dr. Lin's findings that were

inconsistent with other evidence on the record, in compliance with the treating physician

rule. *See* 20 C.F.R. §§ 404.1527(d)(4) ("Generally, the more consistent an opinion is

with the record as a whole, the more weight we give to that opinion.").

### b. The ALJ Gave Good Reasons for Discounting Dr. Lin's Overall Opinion

The record reveals that the ALJ gave "good reasons" for discounting Dr. Lin's

overall opinion. As discussed above, portions of Dr. Lin's conclusions were not

sufficiently explained or substantiated, and other findings conflicted with substantial

evidence on the record. In contrast, the ALJ methodically evaluated Dr. Lin's opinion

using the factors mandated by 20 C.F.R. § 404.1527(d)(2), and assigned those findings

the weight dictated by that evaluation. In a decision that is a model to be followed by

others, the ALJ articulated "good reasons" for his conclusions that were "sufficiently

specific to make clear to any subsequent reviewers the weight the adjudicator gave to the

-13-

(1:09 CV 02862)

treating source's medical opinion and the reasons for that weight."  SSR. 96-2p.[6]

### 2.  The ALJ's Rejection of the Fine Manipulation Limitation into his RFC Determination is Supported by Substantial Evidence

In a general "To whom it may concern" note written by Dr. Lin and dated June 11, 2008, the doctor opined, among other things, that Sims "has bilateral carpal tunnel with hand numbness that prevents her from typing or writing for longer than 10 minutes at a time."  (TR 130); ECF No. 17 at 7.  Hinging her objection to the ALJ's RFC determination upon this note, Sims complains that the ALJ erroneously rejected these restrictions when "he did not include any fine manipulation limitation in his residual functional capacity evaluation."  ECF No. 17 at 7.  Sims' argument is flawed because a mere three months later Dr. Lin contradicts this general finding in his own RFC assessment.  On a form designed for the purpose of permitting medical professionals to assess the physical capacity of a claimant based upon "clinical evaluation and test finding[s]", Dr. Lin, in September 2008,  opined that Sims was capable of *frequently* performing fine manipulation.  (TR 134-135.)

The ALJ attributed Dr. Lin's opinion on this matter great weight and explained: "I give weight to Dr. Lin's opinion on lifting and carrying, standing walking, grasping,

---

[6] *Compare Wilson v. Comm'r Soc. Sec.,* 378 F.3d 541, 545-46 (6th Cir. 2004) (remanding the case because the ALJ did not give good reasons for rejecting a treating physician's opinion as the record indicated that the ALJ had failed to clarify whether the opinion "was not 'well supported by medically acceptable clinical and laboratory diagnostic techniques' or was 'inconsistent with the other substantial evidence in [the] case record,' 20 C.F.R. § 404.1527(d)(2), [had] not [identified] the evidence supporting such a finding, and [had] not [explained] its application of the factors listed in 20 C.F.R. § 404.1527(d)(2) to determine the weight given to [the treating source's] opinion.")

-14-

(1:09 CV 02862)

pushing, pulling and *fine manipulation* because they are consistent with and supported by

the weight of the evidence, including his treatment notes and Sims' wide range of daily

activities."  (TR 20) (emphasis added).  In defending his exclusion of a fine manipulation

limitation from his RFC determination, the ALJ articulated:

> Counsel argued that the residual functional capacity should include
> limitations with fine manipulation because of [] Sims' carpal tunnel
> syndrome.  I did not include such limitations because Dr. Lin did not offer
> this limitation and because no other treating or examining physician offered
> such a limitation. The medical evidence [] does not establish persistence of
> significant symptoms or limitations for any continuos 12-month period, and
> no medical source has ever considered the clinical signs significant enough
> to warrant corrective surgery.  (TR 21-22.)

Additionally, the ALJ's assertion that other evidence on the record supports Dr.

Lin's conclusion regarding Sim's ability to engage in fine manipulation tasks is also

substantiated.  As the ALJ explained in his decision, no other medical source opined that

Sims had this restriction.  (TR 21.)  In support of this conclusion, Defendant highlights to

the Court that "during the relevant time, state agency reviewing physician Dr. Cho

assessed Plaintiff's RFC and opined that Plaintiff had no fine manipulation limitations."

ECF No. 19 at 7;(TR 395.)

Moreover, as both the ALJ and Defendant indicate, Sims' own testimony refutes

this restriction.  The record reveals that Sims engaged in a lot of activities that involved

fine manipulation tasks, such as cleaning, and driving her car, as well fulfilling her duties

mandated by her part-time job, which required a lot of phone work.  (TR 481-483.)  Thus,

despite Sims' argument to the contrary, the Court finds that the ALJ's rejection of fine

manipulation restriction into his RFC determination was based on substantial evidence,

-15-

(1:09 CV 02862)

*i.e.*, "relevant evidence as a reasonable mind might accept as adequate to support a

conclusion." *Rogers v. Comm'r of Soc. Sec.*, 486 F.3d 234, 241 (6th Cir. 2007);

*Richardson v. Perales*, 402 U.S. 389, 401, (1971) (citing *Consol. Edison v. NLRB*, 305

U.S. 197, 229 (1938)).

      The record supports Sims' assertion that the ALJ did not explicitly explain his

rejection of Dr. Lin's June 11, 2008 statement that Sims "was unable to write or type for

longer than 10 minutes at a time due to her bilateral carpal tunnel syndrome." ECF No.

17 at 7;(TR 130.)  Contrary to Sims' assertion, however, the ALJ was not required to do

so.

> It is well settled that an ALJ can consider all the evidence without directly
> addressing in his written decision *every piece of evidence* submitted by a
> party.  Nor must an ALJ make explicit credibility findings as to each bit of
> conflicting testimony, so long as his factual findings as a whole show that he
> implicitly resolved such conflicts.

*Kornecky v. Comm'r Soc. Sec.*, 167 Fed. Appx 496, 507-08 (6th Cir. 2006) (citing *Loral*

*Defense Systems-Akron v. N.R.L.B.*, 200 F.3d 436, 453 (6th Cir. 1999) (citations and

internal quotations omitted).  The record reflects that while the ALJ did not directly

address the June 11, 2008 findings, his factual findings as a whole demonstrate that he

rejected the restriction contained therein because he found Dr. Lin's opinions overall to

be contradicted By Dr. Lin's ultimate RFC determination and in direct conflict with

substantial evidence on the record.[7]  Thus, the ALJ's determination in this regard are to

---

    [7]  It bears noting that, technically, Dr. Lin did not offer a fine manipulation restriction as
he made no such finding in his RFC determination.  The earlier issued "To whom it may
concern" note to which Sims clings is clearly and quicky refuted by the doctor himself in an RFC
specific opinion issued just three months later.  *Compare* Tr. 130 with 135.

-16-

(1:09 CV 02862)

be respected.  *Id.*

The ALJ's RFC and ultimate disability determination is within that "zone of choice within which decisionmakers may go either way without interference from the courts," as there is no doubt that his opinion is one supported by substantial evidence. *Felisky v. Bowen*, 35 F.3d 1027, 1035 (6th Cir. 1994).

### VI.  Conclusion

The ALJ's analysis of the treating physician's opinion and related findings comport with the treating physician rule and is supported by substantial evidence in the record.  *See* 20 C.F.R. § 404.1527(d)(2) and SSR 96-2p.

The Agency's final decision denying benefits to Sabrina Sims is affirmed.


IT IS SO ORDERED.

  March 31, 2011                              /s/ Benita Y. Pearson
Date                                       United States District Judge